IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

———————————————

STATE OF ARIZONA, *Appellee,*

*v.*

JUAN FRANCISCO LOPEZ, *Appellant.*

No. 1 CA-CR 12-0726

FILED 5-1-2014

———————————————

Appeal from the Superior Court in Maricopa County
No.   CR2011-153086-001
The Honorable Daniel G. Martin, Judge

**REVERSED AND REMANDED**

———————————————

COUNSEL

Arizona Attorney General's Office, Phoenix
By Andrew Reilly
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Stephen J. Whelihan
*Counsel for Appellant*

---

**OPINION**

Presiding Judge Kent E. Cattani delivered the opinion of the Court, in which Judge Margaret H. Downie and Judge Michael J. Brown joined.

---

**C A T T A N I**, Judge:

¶1        Juan Francisco Lopez appeals his conviction and sentence for arson of an occupied structure. Lopez asserts that the trial court (1) incorrectly instructed the jurors that, under a "transferred knowledge" theory, Lopez's mental state in knowingly burning a tarp could establish that he knowingly burned an occupied structure, and (2) improperly excluded two types of admissible evidence. For reasons that follow, we conclude that the trial court improperly instructed the jurors and that the error was not harmless. Accordingly, we reverse Lopez's conviction and remand for further proceedings consistent with this decision. We further address the evidentiary issues Lopez has raised because they are likely to reoccur on remand.

**FACTS AND PROCEDURAL HISTORY**

¶2        Lopez lived in a townhome owned by D.J., who handled Lopez's finances and was the payee for his Social Security disability checks. D.J. was at a barbecue with her one-year-old daughter when she received a call from Lopez, who was at home with D.J.'s other two children. Lopez had argued with his ex-wife earlier that day and had been drinking. Lopez was upset, and he told D.J. that the house was open and unlocked. Worried, D.J. returned home to find Lopez in the driveway yelling.

¶3        Lopez argued with D.J. and at some point told her he was going to burn down the house. D.J. did not think he was serious and went inside, but shortly thereafter looked through the door and saw flames. Using a cigarette lighter, Lopez had lit on fire a tarp that hung down from a beam along the outside of the carport. After the tarp began burning, Lopez grabbed a nearby garden hose and put out the fire. By that time, the fire had burned approximately half of the tarp and had charred the stucco along the outside of the carport beam.

¶4         Shortly after Lopez put out the fire, D.J.'s fiancé came to the house and began to argue and fight with Lopez.  Police officers responded to a call from a neighbor reporting the fight, and when they arrived at the house, they became aware that there had been a fire and contacted the Phoenix Fire Department.

¶5         A fire investigator interviewed Lopez, who acknowledged lighting the tarp on fire and indicated that it went up in flames much faster than he thought it would.  Lopez stated that he had started the fire because D.J. had yelled at him for calling her, and that he decided to "give her a reason to yell."

¶6         The State indicted Lopez on one count of arson of an occupied structure, a class 2 felony, and two counts of endangerment, each a class 6 felony.  The State alleged three prior felony convictions and three aggravating circumstances.  Prior to trial, the court dismissed one of the endangerment counts at the State's request.

¶7         At trial, after considering the evidence detailed above and being instructed on the elements of the offenses and on the theory of "transferred knowledge," the jury convicted Lopez of arson of an occupied structure, but acquitted him of endangerment.  The jury found that the State had not established two of the alleged aggravating factors, and was unable to reach a verdict on the third.

¶8         The trial court found that Lopez had three prior felony convictions and sentenced him as a repetitive offender to a mitigated 12-year prison term.  Lopez timely appealed, and we have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033.[1]

## DISCUSSION

### I.    Instruction on Transferred Knowledge.

¶9         Lopez argues that the trial court erred by instructing the jury regarding "transferred knowledge," and that the error was not harmless. We conclude that the instruction improperly eliminated from consideration an element of the charged arson offense, and that the error thus requires that Lopez's conviction be vacated.

---

[1]       Absent material revisions after the relevant date, we cite a statute's current version.

¶10        We review *de novo* whether a jury instruction correctly states the law. *State v. Orendain*, 188 Ariz. 54, 56, 932 P.2d 1325, 1327 (1997). If the defendant timely objected to an instruction that incorrectly states the law, we conduct a harmless error analysis. *State v. Gomez*, 211 Ariz. 494, 499–500, ¶¶ 24–26, 123 P.3d 1131, 1136–37 (2005).

¶11        Arson of an occupied structure is defined in A.R.S. § 13-1704(A):

> A person commits arson of an occupied structure by knowingly and unlawfully damaging an occupied structure by knowingly causing a fire or explosion.

¶12        In addition to instructing on the elements of this offense, the trial court defined the culpable mental state of "knowingly"[2] and gave the following instruction concerning "transferred knowledge":

> You may find that the defendant acted knowingly as to [D.J.] on the charge of arson of an occupied structure, arson of a structure, or arson of property if you find transferred knowledge. Transferred knowledge is established if the actual result of the defendant's action differs from that which the defendant knew or contemplated, only in the respect that: One, a different person or a different property is injured or affected; or two, the injury or harm known or contemplated would have been more serious or extensive than that caused.

The court gave the transferred knowledge instruction at the State's request over Lopez's objection, adapting the instruction from the Revised Arizona Jury Instruction ("RAJI") pertaining to "transferred intent." *See* RAJI Stat. Crim. 2.024.

¶13        The concept of a transferred mental state has long been recognized in Arizona and applies, for example, in the "bad aim" situation in which a defendant intends to hit one party but misses and accidentally hits another. Under that scenario, the defendant's felonious intent toward

---

[2]    The court instructed the jurors that "knowingly" means "that a person is aware or believes that his or her conduct is of that nature or that the circumstance exists. It does not require any knowledge of the unlawfulness of the act or omission."

the person he missed is transferred and deemed to apply to the person he unintentionally hit. *See State v. Cantua-Ramirez*, 149 Ariz. 377, 379, 718 P.2d 1030, 1032 (App. 1986).

¶14 A.R.S. § 13-203(B)(1) codifies the transferred mental state concept for "intentional" crimes:

> If intentionally causing a particular result is an element of an offense, and the actual result is not within the intention or contemplation of the person, that element is established if:

> The actual result differs from that intended or contemplated only in the respect that a different person or different property is injured or affected or that the injury or harm intended or contemplated would have been more serious or extensive than that caused[.]

Section 13-203(C) similarly provides for a transferred culpable mental state with respect to "reckless" or "negligent" conduct. There is no comparable statutory provision, however, referencing the culpable mental state of "knowingly."

¶15 Although there is not a statutory basis for a transferred mental state instruction regarding "knowing" conduct, in *State v. Amaya-Ruiz*, 166 Ariz. 152, 173, 800 P.2d 1260, 1281 (1990), the Arizona Supreme Court suggested that such an instruction might be appropriate in certain instances. The court ruled however, that some criminal statutes are worded in such a way as to preclude a transferred intent instruction, because the instruction would improperly permit jurors to convict without finding every element of the offense. *Id.* (reversing manslaughter conviction for knowingly or recklessly causing the death of an unborn child by any physical injury to the mother based on transferred intent instruction that allowed conviction based only on intent toward mother, "without finding the mental state *toward the unborn child* required by [A.R.S. § 13-1103(A)(5)]").

¶16 Based on the reasoning in *Amaya-Ruiz*, a transferred intent mental state instruction is similarly improper in a case involving a charge of arson of an occupied structure. As noted previously, arson of an occupied structure (a class 2 felony) requires a showing that the defendant knowingly damaged an occupied structure by knowingly causing a fire or explosion. In contrast, arson of a structure (a class 4 felony) and arson of property (a class 4 or 5 felony or a class 1 misdemeanor depending on the value of the property) require only a showing that the defendant

"knowingly and unlawfully damag[ed] a structure or property by knowingly causing a fire or explosion." A.R.S. § 13-1703(A). The transferred intent instruction here improperly permitted the jurors to convict without finding every element of the charged offense; they were instructed that they could convict Lopez of knowingly burning an occupied structure simply because he knowingly burned property (the tarp).

¶17        The State asserts that any error in giving the transferred knowledge instruction was harmless. We conclude otherwise, however, because although the State presented evidence that the tarp was attached to the house (which would mean that transferred intent regarding the tarp was irrelevant), the prosecutor specifically argued that Lopez's mental state in knowingly burning the tarp was dispositive regardless whether the tarp was part of the house:

> [E]ven if you want to consider [the argument that] the tarp is anything other than part of the house, the fact that he set the tarp on fire and that burned the house, he is still acting knowingly. By setting the tarp on fire, his knowledge of setting the tarp on fire transfers to the house being burned. And this is the bottom line. If you knowingly started any fire, then he knowingly damaged the house. And that means knowingly has been proven.

Under the circumstances presented, we cannot say that "the guilty verdict actually rendered in this trial was surely unattributable to the error." *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993) (emphasis and citation omitted). Accordingly, we vacate Lopez's conviction and sentence and remand for a new trial.

¶18        Although our ruling renders Lopez's remaining arguments moot, we nonetheless address them because they will be relevant on remand.

## II.    Preclusion of Evidence.

¶19        Lopez argues that the trial court erred by precluding evidence of his brain injury and of the fight he was involved in with D.J.'s fiancé following the fire incident. We review a trial court's rulings on the admissibility of evidence for abuse of discretion. *State v. Davolt*, 207 Ariz. 191, 208, ¶ 60, 84 P.3d 456, 473 (2004). We review *de novo*, however, questions of law relating to admissibility. *State v. Moran*, 151 Ariz. 378, 381, 728 P.2d 248, 251 (1986).

### A.    Evidence of Brain Injury.

**¶20**       The trial court granted the State's motion *in limine* to preclude Lopez from introducing evidence of his 2001 brain injury and resulting mental disability, finding that, under *State v. Mott*, 187 Ariz. 536, 539–45, 931 P.2d 1046, 1049–55 (1997), such information was inadmissible "diminished capacity" evidence.  Lopez contends that the evidence should have been admitted because it "was relevant to a trait of character that was pertinent to his defense, i.e., the trait of acting impulsively under stress without being aware of the consequences of his actions."

**¶21**       Arizona does not recognize a "diminished capacity" defense, and (absent a guilty except insane defense) a defendant may not present evidence of a mental disease or defect alleged to have rendered him incapable of forming the requisite *mens rea.  Id.*    Although Lopez characterizes the proposed evidence regarding his brain injury and mental condition as character trait evidence rebutting a specified mental state for the charged offense, the trial court correctly ruled that the proposed evidence was relevant only to Lopez's "diminished capacity to appreciate his conduct."  *See State v. Buot*, 232 Ariz. 432, 436, ¶ 20, 306 P.3d 89, 93 (App. 2013) (holding that "a defendant charged with second-degree murder may not offer evidence that due to a character trait of impulsivity, he did not act knowingly or recklessly because he lacked the power to control his actions").

**¶22**       Lopez's reliance on *State v. Christensen*, 129 Ariz. 32, 628 P.2d 580 (1981), is misplaced.  In *Christensen*, the Arizona Supreme Court held that expert psychiatric testimony on the subject of the defendant's character trait of acting impulsively is admissible to rebut a charge of first degree, premeditated murder.  *Id.* at 34–35, 628 P.2d at 582–83.  That holding has been limited, however, to cases involving evidence offered to rebut *premeditation.  See Buot*, 232 Ariz. at 436, ¶ 18, 306 P.3d at 93 (noting that "we do not understand *Christensen* to require a court to admit character trait evidence of impulsivity to prove a defendant did not act knowingly or recklessly").

**¶23**       Finally, Lopez asserts that Arizona's rule precluding evidence of diminished capacity to negate the culpable mental state for an offense violates the Due Process Clause of the United States Constitution.  But the United States Supreme Court has specifically held that exclusion of this type of evidence does not violate principles of due process.  *Clark v. Arizona*, 548 U.S. 735, 779 (2006).  Accordingly, the trial court did not err by precluding evidence of Lopez's brain injury.

### B.    Extrinsic Evidence of Lopez's Fight with D.J.'s Fiancé.

¶24        Lopez argues that the trial court erred by precluding evidence concerning his fight with D.J.'s fiancé after the fire.  Lopez sought in particular to introduce evidence that D.J.'s fiancé started the fight.  Lopez claims this evidence was relevant to whether D.J. lied when she told the police that Lopez started the fight, and by extension, that D.J. lied when she reported that Lopez threatened to burn down the house before lighting the tarp on fire.

¶25        The trial court did not err by precluding this evidence.  The issue of who started the fight between Lopez and D.J.'s fiancé was a collateral matter that was not relevant to Lopez's conduct in setting the tarp on fire before the fight.  Although a witness's credibility is always relevant, "[i]t is well settled that when impeaching a witness regarding an inconsistent fact collateral to the trial issues, the impeaching party is bound by the witness' answer and cannot produce extrinsic evidence to contradict the witness."  *State v. Hill*, 174 Ariz. 313, 325, 848 P.2d 1375, 1387 (1993).  "Evidence is collateral if it could not properly be offered for any purpose independent of the contradiction."  *Id.*; *see also* Ariz. R. Evid. 608(b) (providing that attacks on a witness's credibility based on specific instances of conduct, other than conviction of a crime, may not be proved by extrinsic evidence).    "The nearly universal rule proscribing impeachment on collateral matters is based on the questionable utility of such evidence and its potential for confusing or distracting the trier of fact."  *State v. Munguia*, 137 Ariz. 69, 71, 668 P.2d 912, 914 (App. 1983).

¶26        Because the question of who started the fight between Lopez and D.J.'s fiancé was collateral to the issue of Lopez's guilt, the trial court did not abuse its discretion by precluding evidence regarding the fight.

### CONCLUSION

¶27        For the reasons stated, we reverse Lopez's conviction and sentence and remand for further proceedings consistent with this decision.



Ruth A. Willingham · Clerk of the Court
F I L E D : MJT