NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

JAY RANDALL JONES, JR., *Appellant.*

No. 1 CA-CR 15-0232
FILED 2-18-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2014-002142-001
The Honorable Alfred M. Fenzel, Judge

**CONVICTIONS AFFIRMED AND REMANDED FOR
CLARIFICATION OF SENTENCES**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

―――――――――――――――――

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

―――――――――――――――――

**H O W E**, Judge:

¶1        Jay Randall Jones, Jr., appeals his convictions and sentences for one count of attempt to commit first degree murder, two counts of aggravated assault, one count of discharge of a firearm at a residential structure, two counts of burglary in the first degree, one count of theft, and one count of endangerment. For the following reasons, we affirm Jones' convictions, but remand to clarify the sentences imposed.

## FACTS AND PROCEDURAL HISTORY

¶2        At approximately 4:00 a.m. in early March 2014, police officers responded to a silent alarm at a gun shop located in a strip mall. They saw a large jagged hole in a wall that divided the gun shop and a vacant office. The officers entered the vacant office and heard voices through the hole and coming from the gun shop.

¶3        Unbeknownst to Jones that the officers were on the other side, he began to crawl through the hole towards the vacant office. When he noticed the officers, however, Jones retreated to the gun shop and fled through a rear entrance. Detective Higgins and Officers Frandsen and Strnad pursued Jones through a nearby trailer park, and Higgins and Jones exchanged gunfire in an adjacent neighborhood. Although neither Higgins nor Jones was shot, one bullet Jones shot pierced the side of a mobile home and entered the kitchen while the occupant, E.M., was making coffee. The bullet lodged in the refrigerator, which was welded to the wall, and "approximately an inch away from [E.M.'s] coffee pot."

¶4        Meanwhile, Jones exchanged gunfire with the police. Jones fired one shot at Detective Higgins and then backed up, "tripping over his own feet," but still holding the gun in his hand. The detective fired more shots at Jones; Jones finally "raised up his hands, yelled something like, okay, okay, and then threw the gun to the side." After arresting Jones, the police discovered approximately $40,000 worth of firearms stuffed in duffel bags in the gun shop and vacant office.

¶5        The State charged Jones with one count of attempt to commit first degree murder (Count 1); three counts of aggravated assault (Counts 2, 3, and 4); one count of discharge of a firearm at a residential structure (Count 5); two counts of burglary in the first degree (Counts 6 and 7); one count of theft (Count 8); and one count of endangerment (Count 9). The trial court granted Jones' motion for judgment of acquittal on Count 4. The jurors convicted Jones of the remaining counts.

¶6        At the sentencing hearing, the trial court imposed terms of 15 years' imprisonment for Counts 1 and 2, to run concurrently with each other. For Count 3, the court imposed a term of 10.5 years' imprisonment, to run consecutively to the sentences for Counts 1 and 2. For Count 5, it imposed a term of 10.5 years' imprisonment, to run "concurrently with the other sentences." For Counts 6, 7, and 8, the court imposed terms of 7 years' imprisonment for each count, to run "concurrently with each other and with Count 5." For Count 9, the court imposed a term of 3 years' imprisonment, to run consecutively to the sentences for the other counts.

¶7        The trial court then summarized its oral pronouncement: "So, it's basically 10 and a half on 1 and 2 it's concurrent—15 each on 1 and 2 concurrently; 10 and a half consecutive to 1 and 2; Count 5, concurrent, 10 and a half; Count[s] 6, 7 and 8, consecutive; and Count 9, 3 years consecutive." Defense counsel then clarified: "Your Honor, you said on Counts 6, 7, and 8 concurrent with Count 5?" The court answered: "You're right. Concurrent with Count 5, but consecutive to Counts 1, 2, and 3. Concurrent with Count 5, but consecutive to Counts 1, 2 and 3 and 9." Jones timely appealed.

## DISCUSSION

### 1. Sufficiency of Evidence

¶8        Jones argues that insufficient evidence supports his convictions on aggravated assault against Officer Strnad and discharge of a firearm at a residential structure. We review de novo the sufficiency of evidence to support a conviction. *State v. Pena*, 235 Ariz. 277, 279 ¶ 5, 331 P.3d 412, 414 (2014). In doing so, we view the evidence in the light most favorable to sustaining the verdicts, resolving all reasonable inferences against the defendant. *State v. Greene*, 192 Ariz. 431, 436 ¶ 12, 967 P.2d 106, 111 (1998). Reversible error based on insufficiency of the evidence occurs only when no probative facts support the conviction. *State v. Felix*, 237 Ariz. 280, 289 ¶ 30, 349 P.3d 1117, 1126 (App. 2015). The evidence, however, must be substantial enough for a reasonable person to determine that it supports

a verdict of guilty beyond a reasonable doubt. *State v. Stroud*, 209 Ariz. 410, 411–12 ¶ 6, 103 P.3d 912, 913–14 (2005). Here, sufficient evidence supports Jones' convictions for aggravated assault against Officer Strnad and discharge of a firearm at a residential structure.

¶9 First, substantial evidence supports Jones' conviction for aggravated assault against Officer Strnad. As applicable here, a person commits aggravated assault by intentionally placing a police officer engaged in the execution of any official duties in reasonable apprehension of imminent physical injury while knowing or having reason to know that the victim is a police officer. A.R.S. §§ 13–1203(A)(2), –1204(A)(8)(a). The record establishes that while Officer Strnad was on duty and dressed in her police uniform, she pursued Jones on foot after he fled the gun store. During the pursuit, Jones, while holding a handgun, looked over his shoulder at Strnad. The officer testified, "I thought he was going to shoot me." Consequently, Strnad took cover behind a nearby pillar before running to the area where Higgins was located. Jones fired at least two shots in the direction of the officers, and Strnad was concerned for her safety. This evidence was sufficient for the jurors to conclude that Jones intentionally placed Strnad in imminent fear of being shot and injured. *See In re William G.*, 192 Ariz. 208, 213, 963 P.2d 287, 292 (App. 1997) (noting that when determining one's state of mind, absent an admission, the court uses inferences "from all relevant surrounding circumstances"). Accordingly, based on this evidence, the jurors could reasonably conclude that Jones committed aggravated assault against Officer Strnad.

¶10 Second, substantial evidence similarly supports Jones' conviction for discharge of a firearm at a residential structure. A person commits this offense by knowingly discharging a firearm at a residential structure. A.R.S. § 13–1211(A). The mental state of "knowingly" requires only that the defendant "is aware of or believes that [his] conduct is of that nature or that the circumstance exists" and "does not require any knowledge of the unlawfulness of the act or omission." A.R.S. § 13–105(10)(b). Contrary to Jones' assertion, evidence that the trailer was his intended target is not required to sustain his conviction. *See State v. Lopez*, 234 Ariz. 465, 468 ¶ 13, 323 P.3d 748, 751 (App. 2014) ("The concept of a transferred mental state has long been recognized in Arizona and applies, for example, in the 'bad aim' situation in which a defendant intends to hit one party but misses and accidentally hits another. Under that scenario, the defendant's felonious intent toward the person he missed is transferred and deemed to apply to the person he unintentionally hit.") (citation omitted).

¶11 Here, substantial evidence supports Jones' conviction for discharging a firearm at a residential structure. The record establishes that Jones ran through the trailer park where E.M.'s mobile home was located before firing his weapon. Further, based on Jones' and the detective's respective locations during the gunfight, the evidence shows Jones fired his weapon in the direction of the trailer park. E.M. testified that, at the time of the gunfire, he was making coffee when a bullet pierced the wall of his mobile home and lodged in his refrigerator. The police subsequently located the bullet in E.M.'s wall, although they could not recover it. Moreover, Jones and the detective were the only individuals to fire their weapons around the time the bullet entered E.M.'s home. Based on this evidence, the jurors could reasonably conclude that Jones knowingly discharged his firearm in the direction of E.M.'s residence. Consequently, substantial evidence supports Jones' convictions for aggravated assault against Officer Strnad and discharging a firearm at a residential structure.

## 2. Jury Instructions and Verdict Forms

¶12 Jones next contends that the verdict forms and final jury instructions failed to identify the victims for Counts 1, 2, 3, and 9, thereby violating his right to unanimous verdicts. Because Jones did not raise this objection at trial, we review for fundamental error only. *See State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19–20, 115 P.3d 601, 607 (2005). To prevail under fundamental error review, a defendant must prove error, the error was fundamental, and it caused him prejudice. *Id.* at ¶ 20. Because the jurors knew which person was the victim in each count, no error occurred. Jones' argument rests on the faulty premise that the jurors did not know which person was the victim in each count. But during closing arguments, the prosecutor expressly referred to Higgins as the victim of the attempted murder and one of the aggravated assault allegations and Strnad as the victim of the other aggravated assault charge. The prosecutor made clear that the victim of the endangerment charge was E.M. Further, Jones' counsel made these same distinctions in her closing argument. Consequently, the jurors knew which person was the victim in each count, and no error, much less fundamental, prejudicial error, occurred.

## 3. Sentencing

¶13 While reviewing the record, this Court identified a discrepancy between both the sentencing minute entry and order of confinement and the trial court's oral pronouncement of Jones' sentences. The minute entry and order indicate that the prison terms imposed for Counts 3 and 5 are to run concurrently with each other and consecutively

to the concurrent terms imposed for Counts 6, 7, and 8. However, when the trial court orally pronounced Jones' sentences, it ordered the term imposed for Count 5 to run *concurrently* with the terms imposed for Counts 6, 7, and 8. The court also noted that the terms imposed for Counts 6, 7, and 8 run *consecutively* to the term imposed for Count 3, which contradicts imposing concurrent terms for Counts 3 and 5 and ordering Counts 6, 7, and 8 to run *concurrently* with Count 5. Because we cannot determine from the record whether (1) the terms imposed for Counts 3 and 5 are to run consecutively to—or concurrently with—each other; and (2) whether the concurrent terms imposed for Counts 6, 7, and 8 are to run consecutively to—or concurrently with—the term imposed for Count 5, we remand to the trial court to make those determinations. *See State v. Bowles*, 173 Ariz. 214, 216, 841 P.2d 209, 211 (App. 1992) ("[W]hen there is a discrepancy between the oral pronouncement of sentence and the minute entry that cannot be resolved by reference *to the record,* a remand for clarification of sentence is appropriate.").

## CONCLUSION

¶14        For the foregoing reasons, we affirm Jones' convictions, but remand for clarification of the sentences imposed.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama