NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAMES THOMAS SCHMITT, *Appellant.*

No. 1 CA-CR 16-0352
FILED 8-3-2017

Appeal from the Superior Court in Maricopa County
No. CR2015-001645-001 DT
The Honorable Carolyn K. Passamonte, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Lawrence Blieden
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Margaret H. Downie joined.

---

**C R U Z**, Judge:

¶1        James Thomas Schmitt appeals his convictions and sentences imposed after a jury found him guilty of aggravated assault and disturbing the peace.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In July 2014, Schmitt and victim, G.A., were involved in a road-rage incident.  Schmitt's son was driving the truck that cut off G.A.  Schmitt was seated in the front passenger seat.  G.A. followed Schmitt's son until the two vehicles were beside each other and an argument ensued between the drivers.

¶3        While still at the light, Schmitt leaned over his son, pointed a handgun at G.A. and said "back the f— up, mother f—er, before I kill you."  After the light turned green, G.A. followed the truck and called 9-1-1, providing a description of the truck and its license plate number.  Goodyear police located and stopped the Schmitt vehicle.

¶4        Police found Schmitt's gun under the backseat of the truck, and it matched the description given by G.A.  Schmitt admitted he was in the passenger seat of the truck when it cut off G.A., there was a verbal altercation, and he told G.A. to "back the f— off."  Schmitt denied ever pointing the gun at G.A. and insisted he only pointed his finger.

¶5        G.A. testified in the State's case-in-chief at the first trial.  The jury was unable to reach a unanimous decision, resulting in a mistrial.  Prior to the second trial, the State filed its motion to declare G.A. unavailable because the State was unable to locate him.  While the motion to declare G.A. unavailable was pending, Detective Leske served G.A. with a subpoena directing him to appear for trial.  As a result, the court denied the pending motion as moot.

¶6        G.A. did not appear to testify in the State's case-in-chief during the second trial and a bench warrant was issued for his arrest.  At

2

the State's request, the superior court found G.A. unavailable pursuant to Arizona Rules of Evidence ("Rule") 804(a)(5) and ordered redacted transcripts of G.A.'s testimony from the first trial to be read to the jurors.

¶7        Over objection, the superior court allowed Schmitt to elicit testimony from witnesses involved in locating G.A. to "attack the credibility of [G.A.]," pursuant to Rule 806. Unexpectedly, G.A. appeared during Schmitt's case-in-chief and was called in the defense's case-in-chief and as a rebuttal witness for the State. The court limited the scope of G.A.'s testimony to matters not included in his previously read testimony.

¶8        While examining G.A., Schmitt attempted to impeach him with a conversation between G.A. and Officer Benker wherein G.A. expressed he was angry at the prosecution for forcing him to testify and that it was "messed up" that the prosecutor insisted on moving forward with the case. G.A. denied being angry at anyone. The superior court sustained the State's objection to this line of questioning, ruling it was a collateral matter.

¶9        After the close of evidence, Schmitt requested the superior court provide a self-defense jury instruction. The court denied this request, finding no evidence to support the instruction.

¶10        The jury found Schmitt guilty of aggravated assault and disorderly conduct. Schmitt timely appealed. We have jurisdiction under Arizona Constitution Article VI, Section 9, and Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).[1]

## DISCUSSION

¶11        Schmitt argues he was denied his Sixth Amendment right of confrontation because the superior court allowed limited live testimony from G.A. after his previous testimony had been read into the record, and unduly emphasized G.A.'s live testimony. Schmitt also claims the court erred in allowing a juror question as to whether G.A. still believed he was threatened with a gun. Lastly, Schmitt argues the court abused its discretion in denying his request for a self-defense jury instruction.

---

[1]        We cite the current version of the relevant statute unless revisions material to this decision have occurred since the events in question.

I.      Evidentiary Issues

**¶12**        Generally, evidentiary rulings are reviewed for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42, 140 P.3d 899, 912 (2006). However, evidentiary rulings that implicate the Confrontation Clause are reviewed *de novo. Id.*

        A.      G.A.'s Live Testimony

**¶13**        Schmitt argues his right to confront G.A. under the Sixth Amendment was violated because of the superior court's restrictions on G.A.'s testimony. We disagree.

**¶14**        A criminal defendant has a constitutional right to confront the witnesses against him. *State v. Dunlap*, 125 Ariz. 104, 105, 608 P.2d 41, 42 (1980). However, even when the Confrontation Clause is concerned, trial judges may impose reasonable limits on cross-examination of repetitive issues. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). A court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Ariz. R. Evid. 403.

**¶15**        Here, the superior court restricted the scope of G.A.'s live testimony to issues not previously presented to the jury. *See id.* During the first trial, Schmitt was represented by counsel and G.A. was subjected to cross-examination. Allowing re-examination regarding the same issues already on the record would have introduced needless cumulative evidence, placed emphasis on the evidence already presented, and caused undue delay. The court gave Schmitt ample opportunity to examine G.A. on any other relevant matter. In doing so, the court satisfied his right to confront G.A. and gave jurors the opportunity to observe G.A.'s demeanor. *See* U.S. Const. amends. IV, VI.

**¶16**        Schmitt argues he was denied the opportunity to confront G.A. when the superior court prohibited his attempt to impeach G.A. with prior testimony regarding exaggeration of his statements. However, Schmitt impeached G.A. on the exaggeration issue during the first trial, and this testimony was read to the jury at the second trial. The court did not err in prohibiting Schmitt from attempting to impeach G.A. again at the second trial on the same issue.

**¶17**        Schmitt was not denied the opportunity to confront G.A. when the superior court prohibited him from examining G.A. about the

statement he made to Officer Benker regarding G.A.'s desire to see the matter dismissed. According to Schmitt, establishing that G.A. thought it was "messed up" that the prosecution insisted on going forward with this case was a statement in contradiction to G.A.'s testimony that the reason for his failure to appear and give testimony revolved around his health issues and, as such, was probative of G.A.'s character for untruthfulness.

¶18 Where a witness denies making a prior inconsistent statement that relates to a matter collateral to the issues being tried, the impeaching party is bound by the witness' answer and may not produce extrinsic evidence to contradict the witness. *State v. Lopez*, 234 Ariz. 465, 470, ¶ 25, 323 P.3d 748, 753 (App. 2014). A hallway conversation where G.A. may have expressed frustration that the prosecution was going forward with the case was a collateral matter not related to the issues in the instant case and G.A. denied making the statement. The court did not err in preventing the introduction of extrinsic evidence related to G.A.'s purported untruthfulness by prohibiting Schmitt from impeaching G.A. on the collateral matter. *See* Ariz. R. Evid. 608(b). Even assuming the hallway conversation was not a collateral matter, the two statements were not in contradiction. That is, G.A. could have absented himself from the proceedings due to health issues while simultaneously having negative feelings about the ongoing prosecution. Therefore, the statement purportedly made to Officer Benker was not probative of a character for untruthfulness and the superior court's limitation of further examination in this regard was appropriate.

B.    Juror Question

¶19 Schmitt argues the superior court erred when it allowed a juror question that exceeded the scope of G.A.'s allowed testimony. We review a court's rulings with respect to answering jury questions for an abuse of discretion. *State v. Manuel*, 229 Ariz. 1, 8, ¶ 35, 270 P.3d 828, 835 (2011).

¶20 In Arizona, jurors may submit written questions to the court so they may be asked of the witnesses. Rule 18.6(e) of the Arizona Rules of Criminal Procedure provides that:

> [j]urors shall be instructed that they are permitted to submit to the court written questions directed to witnesses or to the court; and that opportunity will be given to counsel to object to such questions out of the presence of the jury.

> Notwithstanding the foregoing, for good cause
> the court may prohibit or limit the submission of
> questions to witnesses.

**¶21**        In this case a juror asked, "Do you still believe you were threatened with a gun?"  Schmitt asserts this question violated the superior court's order limiting G.A.'s testimony to matters not already on the record. However, the question included the time up until the day the question was asked, which could not have been included in G.A.'s examination at the first trial.  The court did not abuse its discretion in allowing the question.

II.     Self-Defense Jury Instruction

**¶22**        We review a superior court's denial of self-defense jury instructions for abuse of discretion. *State v. King*, 225 Ariz. 87, 90, ¶ 13, 235 P.3d 240, 243 (2010).  "A defendant is entitled to a self-defense instruction if the record contains the slightest evidence that he acted in self-defense." *Id.* at ¶ 14 (internal quotations omitted).  If a defendant disclaims any assaultive behavior, then he is not entitled to a self-defense instruction even if he would have been justified in defending himself under the circumstances. *State v. Miller*, 129 Ariz. 42, 43, 628 P.2d 590, 591 (App. 1981). Additionally, for a justification instruction to be required, there must be more than mere speculation.  There must be an act, a showing of evidence "upon which the jury could rationally sustain the defense."  *State v. Strayhand*, 184 Ariz. 571, 587-88, 911 P.2d 577, 593–94 (App. 1995).

**¶23**        Schmitt presented evidence that G.A. was swerving his vehicle into the Schmitt truck, forcing Schmitt's son to take evasive action. Additionally, Schmitt argued the State's introduction of evidence that Schmitt stated *if* he had pointed a gun, he would have been justified, also entitles him to a self-defense instruction.  Schmitt declared unequivocally that self-defense was not his theory of the case and claimed to have only pointed one or two fingers at G.A.  Since Schmitt completely denied committing a defensive act, he was not entitled to a self-defense instruction. *See State v. Ruggiero*, 211 Ariz. 262, 264-65, ¶¶ 10-13, 120 P.3d 690, 692-93 (App. 2005).

**CONCLUSION**

¶24   For the forgoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA