IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

ADAM DOUGLAS HAYWOOD,
*Appellant*.

No. 2 CA-CR 2023-0064
Filed June 25, 2024

---

Appeal from the Superior Court in Pinal County
No. S1100CR202001830
The Honorable Steven J. Fuller, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Karen Moody, Assistant Attorney General, Tucson
*Counsel for Appellee*

Kirk Smith, Chandler
*Counsel for Appellant*

**OPINION**

Judge O'Neil authored the opinion of the Court, in which Judge Sklar and Judge Kelly concurred.

O' N E I L, Judge:

¶1        Adam Haywood shot and killed his coworker, B.O., in the passenger seat of a truck.  According to Haywood, he acted in self-defense.  At trial, over Haywood's objection, the state introduced evidence of guns, ammunition, and weapon accessories found at Haywood's home, along with other evidence unconnected to the shooting, to show the jury that Haywood was "not a reasonable person."  On appeal from his conviction for second-degree murder and resulting prison sentence, Haywood asserts this evidence was improperly admitted and prejudiced his defense.  We conclude the evidence was not relevant, and the state has not met its burden to show the evidence's admission was harmless.  We therefore reverse Haywood's conviction and sentence and remand for a new trial.

**Background**

¶2        We view the facts and all reasonable inferences in the light most favorable to affirming Haywood's conviction.  *See State v. Tamplin*, 195 Ariz. 246, ¶ 2 (App. 1999).  In July 2020, Haywood was returning from a job for a moving company.  He was in a truck with S.H. and B.O., two other employees.  S.H. was driving the truck, Haywood was sitting in the middle, and B.O. was sitting in the passenger seat.

¶3        Haywood started insulting B.O., and they argued for about an hour.  Haywood yelled into B.O.'s ear to roll up the window and hit him.  B.O. then yelled at Haywood, warned him not to touch him again, and pointed his finger at him.  Haywood "got up out of the seat to get on top of [B.O.]," who then got partially up out of his seat.  Haywood then fatally shot B.O. four times with a handgun and pushed him out of the open passenger window.  S.H. and Haywood left B.O.'s body and drove away.

¶4        At trial, Haywood admitted that he had shot and killed B.O., but he asserted that he had acted in self-defense.  He denied yelling in B.O.'s ear.  Instead, Haywood testified that after he had "reached over to try and crank up the window," B.O. grabbed Haywood's arm, "balled his fist," and

threatened to break Haywood's nose. Haywood testified he had apologized for inadvertently touching B.O., but B.O. "placed both of his hands around [Haywood's] neck and began choking [him]." He testified B.O. strangled him hard enough that he could neither breathe nor speak for "around 45 seconds." At that point, Haywood drew his gun "with intent to fire to try [to] get [B.O.] off of [him]." Then, he testified, B.O. grabbed the gun with one hand in an attempt to "redirect [the] weapon toward [Haywood]." After regaining control of the gun, Haywood said he fired "four shots with a brief pause between each shot." He testified that he continued firing because he might have missed. According to Haywood, B.O. "still ha[d] one hand . . . on [his] neck" when he fired a fourth shot, after which he was able to "push[] [B.O.] off [him]."

¶5        The defense also elicited testimony from a forensic nurse examiner with expertise in strangulation injuries. She testified that strangulation can be "a form of lethal force." She explained that an individual can lose consciousness after ten seconds and can die after a minute of being strangled with constant pressure on the neck. However, a person can remain conscious after fifty seconds of strangulation, particularly "if there is a struggle, and the pressure is not constant."

¶6        The jury found Haywood guilty of second-degree murder. It also found the state had proven the aggravating circumstance that Haywood possessed a deadly weapon or dangerous instrument during commission of the offense. The trial court sentenced him to twenty-two years in prison. This appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## Discussion

### I.   Admissibility of Note, Other Weapons, and Ammunition

¶7        Haywood argues the trial court erred in admitting evidence of a note on his gun safe and of the "weapons and ammunition found at his residence, other than the specific weapon identified to have shot the victim." "We review a trial court's rulings on the admissibility of evidence for an abuse of discretion." *State v. Buccheri-Bianca*, 233 Ariz. 324, ¶ 7 (App. 2013).

¶8        After Haywood was arrested, law enforcement searched Haywood's house and vehicles pursuant to a warrant. In Haywood's bathroom, officers found the handgun that Haywood had used to shoot B.O. Officers also found other firearms and ammunition, some of which

were in a gun safe in the laundry room. Law enforcement called in the explosive ordinance unit after finding a note on the safe threatening a "Darwin award" if the safe was "tamper[ed] with" and indicating the presence of a booby trap.

¶9         At trial, based on the prosecutor's references to "bombs and boob[y] traps" during voir dire, Haywood asked the trial court to preclude evidence concerning the note on the gun safe because the note was not relevant and was unfairly prejudicial. Haywood offered "to stipulate that the firearm that they [had] located in his house was located there and that it was his so that none of that testimony is even needed." The prosecutor asserted the note was relevant because the jury "need[s] to look at [Haywood] and whether he is a reasonable person" because "[t]his is a self-defense case." The prosecutor argued the note "goes to state of mind in terms of whether or not [Haywood] is a reasonable person" because it shows "he is a bit paranoid." The prosecutor also argued the evidence of the note and bomb squad was relevant to the jury's determination of how "much credit they should give to what [Haywood] believed was happening at the time." The court denied Haywood's motion, finding "the probative value of the note on the safe outweighs any prejudicial effect to the defendant."

¶10        The prosecutor articulated the same theory to the jury during opening statements, explaining that law enforcement "had to call the bomb squad because [Haywood] had a note" threatening a booby trap on the safe. The prosecutor asserted that Haywood was "likely going to tell you that [he] was justified in shooting [B.O.]" because "[he] was acting in self-defense," which requires that Haywood "act[ed] like a reasonable person." The prosecutor explained:

> So you get to look at his actions, get to look at actions leading up to, during and after the murder. To determine if he was in a reasonable state of mind. He was a reasonable person. The state's going to tell you he was not, the evidence is going to show you he was not a reasonable person, he was paranoid and he did not like [B.O.] and he was not justified in shooting [B.O.].

The prosecutor also referenced the additional firearms that were found in Haywood's car and home.

¶11        Haywood renewed his motion "to preclude any mention of the bombs or booby-traps."   The trial court, under an apparent misconception that the weapon used in the murder was found in the safe, denied the renewed motion.  It reasoned that "[i]f there is a weapon that was suspected of being used in a murder and if the defendant is attempting to keep people away from . . . that weapon, that is certainly probative and relevant in the case, it outweighs any prejudicial effect."  The prosecutor explained to the court that "the gun [Haywood] used was not in that safe," and the prosecutor merely intended to use the note solely to demonstrate "whether he was a reasonable person."  The court affirmed its denial of the renewed motion.

¶12        The case detective, who had executed the warrant, later described what law enforcement found during the search of the residence.  This included "surveillance cameras," a "surveillance system," and the note on the gun safe in the laundry room.  According to the detective, the note on the safe required law enforcement to wait for the "explosive ordinance unit," which the prosecutor referenced during trial as the "bomb squad," to arrive.  In addition to the handgun used to kill B.O., the detective also testified that firearm parts were found in a bedroom and live ammunition was found in the kitchen.  Haywood objected on relevance grounds.

¶13        At a bench conference, Haywood noted that "the state is trying to introduce every other firearm that [he] legally possess[es], has the right to bear, and has in his home."  He argued the other firearms or ammunition were not probative because he did not dispute that he shot B.O. with the handgun found in the bathroom.  Instead, Haywood argued the state was "trying to paint a picture that [Haywood] is going to the extreme here" and portray him as "some sort of terrorist, paranoid, delusional person that thinks he is going to be attacked at any moment." He asserted the other firearms and ammunition were "highly prejudicial" and would "basically paint a bad picture of [him]."

¶14        In response, the prosecutor argued the security system, guns, and ammunition went to Haywood's "state of mind" because pictures of the residence would show that "there is nothing of value . . . to protect" and "the sheer number of firearms[,] including the number of magazines," demonstrated Haywood was "not a reasonable person as defense is claiming through self-defense."  The trial court overruled Haywood's objection, reasoning that although "there is very little probative value to the firearms and ammunition," they were "even less prejudicial . . . because [Haywood] has the right to posses[s] the firearms and the ammunition."

¶15        The detective went on to describe the security system, a body camera and dash camera found in Haywood's vehicle, ammunition found in the living room, second bedroom, and gun safe, and firearms found in the gun safe and vehicles.  During cross examination, the detective testified that other than the handgun used to kill B.O., the other weapons, ammunition, and firearm parts had "nothing to do with the case."  He also testified Haywood had a legal right to possess the firearms.  The jury was presented with dozens of photographs depicting the security system, cameras, guns, weapon accessories, ammunition, and the safe.  The prosecutor did not, however, refer to the other weapons, the firearm parts, the ammunition, or the note on the gun safe in its closing argument.

¶16        On appeal, Haywood argues that under Rules 401 and 403, Ariz. R. Evid., "these particular weapons and ammunition are [not] relevant to prove guilt and are certainly prejudicial."  "Evidence is relevant if:  (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Ariz. R. Evid. 401.  And relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice."  Ariz. R. Evid. 403.

¶17        "A person is justified in . . . using deadly physical force against another . . . [w]hen and to the degree a reasonable person would believe that deadly physical force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly physical force."  A.R.S. § 13-405(A)(2).  A self-defense justification relies on "objective standards that depend on the beliefs of a 'reasonable person' in the defendant's circumstances rather than the defendant's subjective beliefs."  *State v. Carson*, 243 Ariz. 463, ¶ 9 (2018).  "[I]f the defendant presents evidence of self defense, the state bears the burden of proving 'beyond a reasonable doubt that the defendant did not act with justification.'"  *State v. King*, 225 Ariz. 87, ¶ 6 (2010) (quoting A.R.S. § 13-205(A)).

¶18        Evidence related to the note on the safe and the other security measures in Haywood's home, including the involvement of what the prosecutor called the "bomb squad," was not relevant to prove that Haywood did not act with justification or for any other disputed issue at trial.  The firearms, ammunition, and accessories other than those connected

to the handgun used to shoot B.O. were similarly irrelevant.[1]  *See* § 13-405(A)(2); *State v. Poland*, 132 Ariz. 269, 281 (1982) (concluding admission of weapon "not connected with the crime" an abuse of discretion when irrelevant and potentially unfairly prejudicial).  The state on appeal presents no argument to suggest this evidence was relevant, and we can think of none.  *See State v. Perez*, 141 Ariz. 459, 464 (1984) ("We are obliged to affirm the trial court's ruling if the result was legally correct for any reason.").

**¶19**　　　At trial, the prosecutor asserted the evidence would demonstrate Haywood was "paranoid," which went "to state of mind in terms of whether or not [Haywood] is a reasonable person."  The prosecutor's argument rested on a misapprehension of the justification for self-defense.  The prosecutor stated that to evaluate Haywood's self-defense claim, the jury would "need to look at [Haywood] and whether he is a reasonable person."  The prosecutor identified no other reason why Haywood's state of mind was at issue.  As articulated by the prosecutor, the purpose in introducing the evidence was to suggest a character trait for unreasonableness in order to show that Haywood acted unreasonably on a particular occasion.  We examine the substantive basis for the evidence's introduction, not the label a party attaches to it.  Here, "state of mind" is a misnomer:  this was improper character evidence by a different name.  *See* Ariz. R. Evid. 404(a)(1).

**¶20**　　　The self-defense justification does not depend on whether a defendant is generally a reasonable person.  *See* § 13-405(A)(2).  Nor does it depend in any sense on a defendant's subjective state of mind.  *See King*, 225 Ariz. 87, ¶¶ 11-12.  The standard for self-defense is "purely objective," and a defendant's own belief about the necessity of force is not an element. *Id.*  The sole question for the jury is what a reasonable person in the defendant's circumstances would have believed.  *Carson*, 243 Ariz. 463, ¶ 9; § 13-405(A)(2).  Moreover, the belief at issue is specific to the circumstances of the defendant at the time of the incident.  § 13-405(A)(2).  Reasonable or not, the weapons and security measures found in Haywood's home bore no connection to whether a reasonable person in Haywood's circumstances

---

[1]We do not address Haywood's argument that the trial court's admission of this evidence "infringed upon [his] right to bear arms" because "we avoid deciding constitutional issues if the case can be resolved on non-constitutional grounds."  *State v. Rios*, 225 Ariz. 292, ¶ 12 (App. 2010).

would have believed deadly physical force was immediately necessary at the time of the shooting. *See id.*

**¶21** Apart from the lack of relevance, the evidence was extremely prejudicial. We are particularly troubled by the prosecutor's references to the bomb squad. Despite the note, the safe was not equipped with bombs or booby traps of any kind. Thus, the bomb squad's involvement would not have been relevant even under the prosecutor's erroneous theory at trial. The prosecutor had no valid purpose for introducing this evidence to the jury.

**¶22** On appeal, however, the state contends that any error was harmless because the evidence was overwhelming. "Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *State v. Henderson*, 210 Ariz. 561, ¶ 18 (2005) ("harmless error standard" appropriate "when a defendant objects at trial and thereby preserves an issue for appeal"). The harmless error standard does not depend on whether "a guilty verdict would surely have been rendered" absent the error. *State v. Leteve*, 237 Ariz. 516, ¶ 25 (2015) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)). The question, instead, is "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* (quoting *Sullivan*, 508 U.S. at 279). In considering this question, we examine "the error in light of all of the evidence." *State v. Bible*, 175 Ariz. 549, 588 (1993). If the properly admitted evidence was overwhelming, this "alone may be dispositive" in concluding the error was harmless. *State v. Romero*, 240 Ariz. 503, ¶¶ 8-9 (App. 2016) (listing factors to consider as part of harmless-error analysis—not all of which apply or carry the same weight in a particular case); *see also State v. Zaid*, 249 Ariz. 154, ¶ 22 (App. 2020).

**¶23** The evidence presented, while substantial, was far from overwhelming. The eyewitness testimony regarding the crucial details of the altercation came exclusively from Haywood and S.H. And, although S.H. described Haywood as the aggressor and provided testimony that was irreconcilable with Haywood's exculpatory account, S.H.'s attention was necessarily limited by his attention to the road. The state points out several reasons to disbelieve Haywood's account, some of which are undoubtedly persuasive. But the ultimate question remains one of Haywood's credibility, which the prosecutor undermined with irrelevant evidence.

**¶24** We acknowledge that there is little in Haywood's testimony to explain the presence of a gunshot wound to B.O.'s back. Indeed, Haywood testified that B.O. was strangling him with at least one hand

when Haywood fired each of the four shots and, at some point, was using the other hand in an attempt to turn the gun towards Haywood. He also testified, however, that he had "lost vision" before he fired the first shot, and he did not regain it until after he fired the fourth shot.

¶25        The state bore the burden of proving beyond a reasonable doubt that Haywood did not act in self-defense. *See King*, 225 Ariz. 87, ¶ 6. A reasonable jury, if it found Haywood credible, might have concluded that the state had failed to meet that burden even if Haywood lacked a specific explanation for all of the evidence. For example, it could plausibly have concluded that the gunshot wound to the back resulted from the struggle that Haywood described, regardless of whether he specifically recalled it.

¶26        The state also argues that any error was harmless because the case detective "ultimately admitted that the same evidence was not relevant to the case" and it "did not argue to the jury that the photographs of the guns, safe, and surveillance equipment were relevant to Haywood's state of mind." Notwithstanding the detective's testimony that it was not relevant, the evidence was admitted. And although the prosecutor did not refer to the improper evidence during closing arguments, the prosecutor suggested to the jury during opening statements that the improper evidence would "show you [Haywood] was not a reasonable person, he was paranoid." *See Romero*, 240 Ariz. 503, ¶ 20 ("The effect of erroneous rulings may also be compounded by reference to missing or improper evidence in arguments to the jury."). The jury had already heard the prosecutor's theory concerning the relevance of the improper evidence when it was shown several dozen images related to Haywood's purportedly unreasonable character during the case detective's testimony.

¶27        The presentation of this irrelevant evidence shaped much of the trial in ways that extend well beyond the prosecutor's own arguments. We cannot view the improper evidence and arguments in isolation but must consider them in the context of their effect on the entire trial, for better or worse. *See id.* ¶ 22 ("Looking at 'the trial record as a whole,'" "[w]e cannot say beyond a reasonable doubt that the [error] had no influence on the jury's verdict." (quoting *United States v. Hasting*, 461 U.S. 499, 509 (1983))). Haywood spent the early portion of his testimony explaining his gun ownership, his interest in deterring theft, and the note on his safe. Haywood also devoted significant time presenting evidence concerning the legality and reasonableness of owning large quantities of guns and taking steps to deter home burglary. For example, while cross-examining the case detective, Haywood established that the explosive ordinance unit was

called as a precautionary measure, Haywood had provided law enforcement the code to his safe, and there were in fact no bombs or booby traps on the safe. Yet in its redirect examination of the detective, the prosecutor further emphasized the purported significance of the explosive ordinance unit's involvement, pointing out that the unit does not "come out to everything" and, when they do, it is "because they received information, that will require them to come out."

¶28 The prosecutor introduced this irrelevant and unfairly prejudicial evidence for the express purpose of influencing the jury's view of Haywood, his credibility, and the likelihood that he instigated the altercation. The prosecutor explained to the trial court the irrelevant evidence would demonstrate that Haywood was "doing thing[s] to [his] house that require the bomb squad to come," informing "how much credit they should give to what he believed was happening at the time." Indeed, credibility is at issue in every trial. *Cf. State v. Lopez*, 234 Ariz. 465, ¶ 25 (App. 2014) (evidence regarding witness credibility is always relevant). Credibility can be uniquely important in the context of a self-defense claim. *See State v. Melendez*, 256 Ariz. 14, ¶¶ 60, 63 (App. 2023). As the prosecutor understood, the verdict in this case depended, in significant part, on whether the jury believed Haywood's account of events was true. By the time the jury listened to Haywood's testimony, it had already viewed dozens of photographs and heard more than an hour of related testimony that the prosecutor had previously told them would demonstrate Haywood's unreasonableness. Haywood's testimony, which was critical to his defense, was shaped by that same evidence.

¶29 The inadmissible evidence could have prejudiced the jury's evaluation of Haywood's credibility and the likelihood that he, not B.O., provoked the altercation. We acknowledge that the jury had reasons apart from the improperly admitted evidence to doubt that Haywood's description of the shooting was accurate or even, perhaps, feasible. Those reasons might have been sufficiently compelling that the jury could have reached the same verdict in a hypothetical trial that occurred without the irrelevant evidence. That, however, is not our standard of review. *See Leteve*, 237 Ariz. 516, ¶ 25. Whatever the likelihood that a different trial would have produced the same result, we must review the evidence in the context of this trial. *See id.* In this trial, the state did present the evidence. And we cannot say the verdict in this trial was surely unattributable to the error. *See id.*

¶30 On this record, and in this trial, the state has not shown beyond a reasonable doubt that the irrelevant evidence "had no influence on the jury's verdict." *Romero*, 240 Ariz. 503, ¶ 22. Because the error was not harmless, we reverse Haywood's conviction and sentence and remand for a new trial. We address the remaining issues that could affect a new trial.

## II. Other Evidentiary Challenges

¶31 Haywood contends the state improperly "let [S.H.] read directly from a document not in evidence" when he testified that Haywood said to the victim, "one day you will get yours." Considering the record in the light most favorable to affirming the conviction, as we must, we conclude that the record does not support this argument. The trial court instructed S.H. to read the transcript of his interview with the police to refresh his recollection and then to turn it over and "answer the question the attorney asked and not anything more than that." S.H. did so.

¶32 Additionally, Haywood argues the state improperly "'led' [S.H.] in its questioning of him to indicate [Haywood] was the main instigator of fights between himself and the victim." At trial, the state asked S.H. if Haywood was "starting the arguments then?" The trial court overruled Haywood's objection to the question as leading. Trial courts generally have discretion to permit leading questions, and this one does not appear unduly suggestive. *See* Ariz. R. Evid. 611(c); *State v. Payne*, 233 Ariz. 484, ¶ 119 (2013). Further, the question did not establish whether Haywood initiated the physical altercation. Even assuming error, it was harmless. *See Henderson*, 210 Ariz. 561, ¶ 18.

## III. Flight or Concealment Instruction

¶33 Haywood argues the trial court abused its discretion in providing the flight or concealment instruction. He contends that "nothing in the record indicat[es]" he "may have taken flight or concealed evidence." "We review the trial court's decision to give a flight instruction for abuse of discretion." *State v. Parker*, 231 Ariz. 391, ¶ 44 (2013).

¶34 A trial court may give a flight or concealment instruction when the evidence supports a reasonable inference that the accused attempted to conceal evidence. *See State v. Smith*, 113 Ariz. 298, 300 (1976); *see also State v. Weible*, 142 Ariz. 113, 116 (1984) ("[C]oncealment after a crime . . . bears on the issue of the defendant's consciousness of guilt."). The state presented evidence of concealment here. S.H. testified that after Haywood

11

shot B.O., he pushed B.O.'s body out through the window of the moving truck and told S.H. to keep going. After S.H. stopped the truck, Haywood discussed hiding the body. Whatever Haywood's explanation, he and S.H. ultimately abandoned the body alongside the road. Further, after the shooting, S.H. testified that Haywood "took some water and tried to clean the car a little bit" to "make it look like the incident never happened." *See Parker*, 231 Ariz. 391, ¶ 48 (complete concealment not required to support flight instruction). This evidence suggests consciousness of guilt, *see Weible*, 142 Ariz. at 116, and the court therefore did not abuse its discretion in giving the instruction, *see Parker*, 231 Ariz. 391, ¶ 44.

## IV. Rule 20 Motion

**¶35**          Finally, Haywood argues the trial court wrongfully denied his Rule 20, Ariz. R. Crim. P., motion for a judgment of acquittal. "[T]he court must enter a judgment of acquittal on any offense charged in an indictment, information, or complaint if there is no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "Substantial evidence is 'proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt.'" *State v. Andersen*, 255 Ariz. 320, ¶ 7 (App. 2023) (quoting *State v. West*, 226 Ariz. 559, ¶ 16 (2011)). "When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603 (1997). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *West*, 226 Ariz. 559, ¶ 16 (emphasis omitted) (quoting *State v. Mathers*, 165 Ariz. 64, 66 (1990)). "We review the denial of a Rule 20 motion de novo." *Andersen*, 255 Ariz. 320, ¶ 7.

**¶36**          Haywood maintains on appeal that "[t]he State presented no evidence that self-defense did not occur" because S.H. testified he did not see Haywood or B.O.'s hands during the physical altercation. *See* § 13-205(A) ("If evidence of justification . . . is presented by the defendant, the state must prove beyond a reasonable doubt that the defendant did not act with justification."). We disagree. The state presented substantial evidence that contradicted Haywood's justification theory. Viewing the evidence in the light most favorable to the prosecution, the trier of fact could have found that Haywood's use of deadly force was not justified. *See West*, 226 Ariz. 559, ¶ 16; *see also* § 13-405(A)(2).

## Disposition

**¶37**      We reverse Haywood's conviction and sentence and remand for a new trial.